IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PHILIP YOUTIE                         :        CIVIL ACTION
                                      :
        v.                            :
                                      :
MACY'S RETAIL HOLDING, INC.,          :        NO.  07-3182
        and                           :
MACY'S, INC.                          :


O'NEILL, J.                                          June 5, 2009

<u>MEMORANDUM</u>

On August 3, 2007, plaintiff Philip Youtie filed a complaint against defendant Macy's Inc. (Macy's),[1] and on March 26, 2009, filed an amended complaint against defendants Macy's and Macy's Retail Holdings, Inc. (Macy's Retail),[2] alleging a breach of plaintiff's employment agreement and violations of the Pennsylvania Wage Payment and Collection Law (WPCL), 43 P.S. § 260.1 et seq.  Defendants filed an answer, affirmative defenses and counterclaims on December 17, 2007, alleging that plaintiff breached his employment agreement, misappropriated trade secrets and/or confidential and proprietary information, breached his fiduciary duty and duty of loyalty, engaged in tortious interference with business and employment relations, was unjustly enriched and engaged in unfair competition.  Defendants request a hearing on damages.

---

[1]   Defendants have had various corporate names during the periods relevant to this litigation.  Macy's was The May Department Stores Company, May DE at the time it acquired David's Bridal's shares and the agreement was signed with plaintiff.  It was later referred to as Federated Department Stores, Inc. and then became Macy's, Inc.  For this reason, regardless of its name at the time of the incident discussed, I will refer to this defendant as Macy's.

[2]   Defendant Macy's Retail was The May Department Stores Company, May NY at the time it signed the agreement with plaintiff.  It was later referred to as Federated Retail Holding, Inc. and then became Macy's Retail Holdings, Inc.  For this reason, regardless of the time of the incident discussed, I will refer to this defendant as Macy's Retail.

Defendants seek declaratory relief regarding whether Macy's Retail lawfully assigned plaintiff's employment agreement on January 31, 2007 to David's Bridal, Inc. and injunctive and monetary relief.  Presently before me are defendants' motions for summary judgment on plaintiff's claims, plaintiff's response and cross-motion for summary judgment on defendants' counterclaims,[3] defendants' reply thereto, plaintiff's reply in support of his cross-motion for summary judgment and defendants' sur-reply thereto, and defendants' motion for partial summary judgment with respect to its counterclaims of breach of contract, breach of fiduciary duty and duty of loyalty and misappropriation of confidential and proprietary information, plaintiff's response and defendants' reply thereto.

BACKGROUND

On August 1, 2000, Macy's acquired all of the publicly-held shares of David's Bridal, Inc.  David's Bridal is a corporation and a clothier specializing in bridal gowns and other formal wear and accessories.  Plaintiff had purchased David's Bridal in 1972, expanded the operations, partnered with Steven Erlbaum beginning in 1989 or 1990 and with Erlbaum made a public offering of David's Bridal's stock in 1999.  After Macy's acquired David's Bridal, plaintiff entered into a contract of employment with a division of Macy's, Macy's Retail, on or about October 1, 2001.  In accordance with the terms of the agreement, Youtie served as the Executive

_____

[3]  Plaintiff moved for summary judgment on counts I through VIII of defendants' counterclaims.  For defendants' count VIII for injunctive relief, plaintiff merely states in a footnote in his cross-motion for summary judgment that injunctive relief is "clearly unwarranted as [plaintiff has] not engaged in any improper conduct."  Defendants did not respond to plaintiff's motion for summary judgment on count VIII.  Because the briefing is insufficient by both parties to determine the merits of a request for injunctive relief, I will deny plaintiff's motion for summary judgment on count VIII without prejudice until briefing with legal analysis is provided.  Parties may simultaneously brief this issue within 15 days from the date of the attached Order.

Vice-President, Product Development and Sourcing of the David's Bridal division of Macy's

Retail.  On November 17, 2006, an affiliate of Leonard Green & Partners signed an agreement

with Macy's to acquire David's Bridal and consummated the sale and transfer of stock of

David's Bridal to the Leonard Green affiliate on January 31, 2007.  As part of the transaction,

Macy's subsidiary Macy's Retail assigned its employment agreement with plaintiff to David's

Bridal.  The agreement provided in relevant part:

> **11. Successors and Assigns**.  This Agreement will inure to the benefit of, and
> will be binding upon, May, its successors and assigns; provided, however, that,
> because this is an agreement for the personal services [sic], you cannot assign any
> of your obligations under this Agreement to anyone else.  May may assign its
> obligations under this Agreement to a May subsidiary; any assignment, however,
> will not relieve May of any of its obligations hereunder except to the extent that
> they are actually discharged by the subsidiary.  Whenever this Agreement refers to
> May, that reference includes any of May subsidiaries or divisions in existence at
> any time during which this Agreement governs the conduct of you and May.

Plaintiff alleges that, at the time his employment agreement was assigned to David's Bridal he

was not aware of, let alone did he consent to, the purported assignment.  Plaintiff argues that he

was therefore no longer an employee of Macy's Retail and, as a result of the termination of his

employment, was entitled to the severance obligations set forth in Paragraph 4(c) and (f) of the

agreement.

Defendants contest plaintiff's claims and his entitlement to severance.  Additionally,

defendants argue that plaintiff's conduct during his employment created their causes of action

against him.

Defendants claim that, in late 2006, plaintiff asked Linda Shaps-Shanin, Vice President

and General Merchandising Manager of David's Bridal, for "first cost" data involving the costs

incurred by the company to manufacture its bridal dresses and gowns.  It is further alleged that,

3

despite being denied access to this information, plaintiff renewed his request for such

information to Shaps-Shanin and her assistant Sharon Zuk in January 2007 but was again denied.

Plaintiff denies that he asked Shaps-Shanin or Zuk for the "first cost" data.  However, plaintiff

admits that he obtained "first cost" data on the dresses in David's Bridal's Spring 2007 catalogue

from Lydia Chow, an employee of Fillberg LTD, David's Bridal's Hong Kong marketing

representation, during a business trip to Hong Kong in January 2007 with other David's Bridal

employees.  Plaintiff does not dispute that the "first cost" data at issue is the cost the

manufacturer charged David's Bridal to manufacture the designs David's Bridal provided the

manufacturer for its Spring 2007 catalogue.  Additionally, plaintiff admitted in his affidavit that

he "asked for the cost data because [] Erlbaum . . . was interested in what David's Bridal paid

various manufacturers for the dresses they manufactured."  Plaintiff further admits that he gave a

copy of the cost sheet to Erlbaum but believes that plaintiff provided it to Erlbaum after plaintiff

recovered from the surgical procedure he underwent after his January trip to Hong Kong.

Plaintiff also admits that he and his former partner Erlbaum had general discussions about

Erlbaum returning to the bridal business.  However, he states that no specifics were discussed

and that neither had plans to enter into a business in competition with David's Bridal.  In his

deposition on June 4, 2008, plaintiff testified that, during the period in which he was still

employed by David's Bridal, he and Erlbaum discussed starting a business in "direct

competition" with David's Bridal but that no specifics were discussed.  However, in his

December 2008 affidavit, plaintiff claimed that the potential business discussed was "a wholesale

dress manufacturing business in an off-shore location" that "would not compete in any way with

David's Bridal."

4

Plaintiff admits that he introduced Shaps-Shanin to Erlbaum on January 29, 2007 but claims that he did so at her request.  He also admits that, after this meeting, he asked Shaps-Shanin for a copy of her employment agreement but claims that she refused to give it to him.  Although Shaps-Shanin asserted that Erlbaum "attempted to convince [her] to join [him] in a competing bridal business," plaintiff argues that it is uncontroverted that Erlbaum never established any type of business and that Shaps-Shanin never left David's Bridal's employ.  Defendants dispute that Shaps-Shanin in any way instigated her introduction to Erlbaum.

Section 6(a) of the Employment Agreement prohibited plaintiff "at any time, directly or indirectly, [from] us[ing] or disclos[ing] any of May's [aka Macy's Retails'] Confidential Information except as authorized and within the scope of [his] employment with May [aka Macy's Retail.]"  Section 6(d) defines Confidential Information as:

> any non-public information pertaining to May's business.  Confidential information includes information disclosed by May to you, and information developed or learned by you during the course of or as a result of your employment with May, which you also agree is May's property . . . .  Confidential information includes, without limitation, information and documents concerning May's processes, suppliers (including May's terms, conditions and other business arrangements with suppliers); supplier and customer lists; advertising and marketing plans and strategies; profit margins; seasonal plans, goals objectives and projections; compilations, anaylses and projections regarding May's divisions, stores, product segments, product lines, suppliers, sales and expenses; files; trade secrets and patent applications (prior to their being public); salary, staffing and employment information (including information about performance of other executives); and "know-how," techniques or any technical information not of a published nature relating, for example, how May conducts its business.

The agreement also contained a non-compete clause for conflicts of interest constraining plaintiff with the following language:

> 5.  Avoiding Conflict of Interest.  (a) At all times while you are employed by May and for one year after your employment terminates, you will not directly

5

or indirectly:

    (i) own, manage, operate, finance, join, control, advise, consult, render services to, have an interest or future interest in or participate in the ownership, management, operation, financing or control of, or be employed by or connected in any manner with any Competing Business;

    (ii) solicit for employment, hire or offer employment to, or otherwise aid or assist (by disclosing information about employees or otherwise) any person or entity other than David's Bridal, May or another May subsidiarty in soliciting for employment, hiring or offering employment to, any employee of David's Bridal, May or another May subsidiary; or

    (iii) take any action which is intended to harm David's Bridal or May or either of their reputations, or that David's Bridal or May reasonably concludes could harm David's Bridal or May or their reputations or lead to unwanted or unfavorable publicity for David's Bridal or May.

David's Bridal terminated plaintiff's employment as Executive Vice President on February 27, 2007 based upon his allegedly competitive and disloyal conduct.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue of material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The party moving for summary judgment has the burden of demonstrating that there are

no genuine issues of material fact. <u>Id.</u> at 322-23.  If the moving party sustains the burden, the nonmoving party must set forth facts demonstrating the existence of a genuine issue for trial.  <u>See</u> <u>Anderson</u>, 477 U.S. at 255.  Rule 56(e) provides that when a properly supported motion for summary judgment is made, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The adverse party therefore must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion, and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  <u>Williams v.</u> <u>Borough of W. Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989).  However, the "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against'" the moving party.  <u>Ely v. Hall's Motor Transit Co.</u>, 590 F.2d 62, 66 (3d Cir. 1978), <u>quoting</u> <u>Smith v. Pittsburgh Gage & Supply Co.</u>, 464 F.2d 870, 878 (3d Cir. 1972).

DISCUSSION

Plaintiff claims that defendants breached the employment agreement by improperly and illegally assigning his employment contract to David's Bridal which resulted in a termination without cause and his entitlement to severance payments.  Because defendants did not make such payments, plaintiff alleges defendants violated the WPCL.  Defendants' counterclaims of breach of contract, misappropriation of trade secrets and/or confidential and proprietary information, breach of fiduciary duty and duty of loyalty, tortious interference with business and employment relations, unjust enrichment and unfair competition rest on two alleged actions by plaintiff: plaintiff's disclosure of "first cost" data to Erlbaum and plaintiff's introduction of David's Bridal

7

employee Shaps-Shanin to Erlbaum.

I.      Plaintiff's Claims

Plaintiff filed claims for breach of contract and violations of the WPCL.  Plaintiff argues

that his employment contract with Macy's Retail was one for personal services and that it was

thus improper and illegal to assign it to David's Bridal without his prior consent.  Therefore,

plaintiff argues that there was a breach of contract because this assignment was, in effect, a

termination from Macy's Retail and that he is entitled to severance benefits under the contract for

his termination without cause.  The parties do not dispute that defendants' failure to make the

alleged required severance payments and the resulting alleged violations of the WPCL are

contingent on whether defendants' assignment of plaintiff's contract to David's Bridal was

proper.  If the assignment was proper, then there is no breach of contract and accordingly no

termination without cause to trigger the severance entitlement and defendants' violations of the

WPCL.

Defendants dispute that the assignment was improper.  They claim that the agreement

permitted the assignment and, moreover, that the law allows such an assignment in situations

involving sale of stock or merger.

To recover for his breach of contract claim under Missouri law,[4] plaintiff must establish

---

[4]  The contract at issue has a choice of law provision which states that Missouri law
governs regarding "any questions or other matters arising under th[e] Agreement."  Where, as
here, federal jurisdiction is based on diversity of citizenship, I must apply the choice of law rules
of the forum state, here Pennsylvania.  St. Paul Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428,
1431 n.3 (3d Cir. 1991) citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).
Under Pennsylvania's choice of law analysis, "Pennsylvania courts generally honor the intent of
the contracting parties and enforce choice of law provisions executed by them."  Kruzits v.
Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994) citing Smith v. Commonwealth Nat'l
Bank, 557 A.2d 775, 777 (Pa. Super. Ct. 1989).  The choice of law provision stands "unless:  (a)

the following elements: "(1) the existence of an enforceable contract between the parties to the action; (2) mutual obligations arising under its terms; (3) the party being sued failed to perform obligations imposed by the contract; and (4) the party seeking recovery was thereby damaged." Jackson v. Williams, Robinson, White & Rigler, P.C., 230 S.W.3d 345, 348 (Mo. Ct. App. 2007).

The parties do not dispute that an agreement and mutual obligations existed between plaintiff and Macy's Retail. The parties dispute only whether defendants failed to perform a contractual obligation. Deciding this issue requires determining whether the assignment was proper.

The employment contract at issue in this case is one for personal services, which, as a general rule, cannot be assigned without the consent of the employee. Alexander & Alexander, Inc. v. Koelz, 722 S.W.2d 311, 312-13 (Mo. Ct. App. 1986), citing Alldredge v. Twenty-Five Thirty-Two Broad. Corp., 509 S.W.2d 744, 749 (Mo. Ct. App. 1974). However, a mere change in the form in which a business is owned or conducted should not work to prohibit assignment. Id. at 313. Whether there is a change in partnership personnel or structure, the incorporation of a previously unincorporated business, the dissolution of a corporation or a change in corporate structure, "if there is no material change in the contract obligations and duties of the employee,

_____

the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties." Berg Chilling Sys., 435 F.3d at 463-64, citing Restatement (Second) of Conflicts of Law § 187(2). Thus, because neither party disputes that Missouri law applies to the breach of contract claim and counterclaim and because none of the above concerns are present, I will apply Missouri law to the breach of contract claims at issue.

there is no reason for the transfer of the rights from one entity or form to another to work an assignment putatively prohibited by the rule against assignment of personal service contracts." Id., internal citations omitted.

The employment agreement between plaintiff and Macy's Retail expressly addressed assignability as follows:

> **11. Successors and Assigns**.  This Agreement will inure to the benefit of, and will be binding upon, May, its successors and assigns; . . . .  May may assign its obligations under this Agreement to a May subsidiary; . . . .  Whenever this Agreement refers to May, that reference includes any of May subsidiaries or divisions in existence at any time during which this Agreement governs the conduct of you and May.

Plaintiff points out that the agreement defines May as "The May Department Stores Company" and that defendants do not dispute that this is May NY, aka Macy's Retail, not the parent company of May DE, aka Macy's.  Plaintiff argues that Macy's Retail and David's Bridal are both subsidiaries of Macy's and therefore the provision permitting Macy's Retail to assign its obligations under the agreement to a Macy's Retail subsidiary cannot apply to David's Bridal.  However, regardless of the subsidiary structure that existed between Macy's Retail and David's Bridal, language in the agreement specifically refers to David's Bridal as a division of Macy's Retail.  The first time that David's Bridal is mentioned, in the first paragraph in the first section of the agreement entitled "Employment," the agreement refers to plaintiff's employment as Executive Vice President "of the David's Bridal division of May," aka Macy's Retail.[5]  When

_____

[5]  Plaintiff's statement of facts in response to defendants' motion for summary judgment and his cross motion for summary judgment state that plaintiff was the Executive Vice-President of the David's Bridal division of May DE, aka Macy's.  The agreement does not include "DE" after May and, based on the plaintiff's own arguments, "May" refers to May NY, aka Macy's Retail in the agreement, not May DE, aka Macy's.  Plaintiff cannot argue for different meanings of the term "May" in different locations of the agreement to benefit him accordingly.  See e.g.,

signing the agreement, plaintiff consented to a possible assignment to David's Bridal as it was

defined as a division of Macy's Retail.  Thus, plaintiff consented to the assignment of his

contract to David's Bridal.  Moreover, plaintiff admits that his duties remained the same; the sole

change was that David's Bridal was obligated to him for his performance of the duties and not

Macy's Retail.  Defendants' motion for summary judgment on plaintiff's breach of contract

claim and WPCL claims against defendants will be granted because plaintiff's claims are based

solely on the assignment being improper.[6]  Accordingly, plaintiff's motion for summary

judgment on all of his claims will be denied.

II.     **Defendant's Counterclaims**

        Defendants seek summary judgment on their counterclaims for breach of contract, breach

of fiduciary duty and duty of loyalty and misappropriation of trade secrets and/or confidential and

proprietary information.  Plaintiff seeks summary judgment on these counterclaims and on

_____

Thompson v. Potter, 2006 WL 783395, at *11 (S.D. Ohio Mar. 27, 2006), holding that "the
plaintiff cannot expect to present two conflicting arguments and have the Court interpret both
sets of facts to his advantage."

        [6]  Because I will find that the agreement expressly permitted assignment, I need not
consider whether the law permits assignment in this circumstance regardless of consent.
However, I note that during the sale and transfer of stock of David's Bridal to a Leonard Green
Partners, LLC affiliate, plaintiff's agreement remained with David's Bridal and that plaintiff
admitted that no material change occurred in his contract obligations or duties.  I also note that
after the assignment plaintiff performed the same duties for David's Bridal without objection
until his termination.
        Moreover, I note that it appears that the language stating that "the Agreement will inure to
the benefit of, and will be binding upon, May, its successors and assigns . . ." also supports the
proposition that plaintiff consented to have his contract assigned.  Missouri courts have
previously held that virtually identical language stating that "[t]his Agreement shall be binding
on and inure to the benefit of the parties and their respective heirs, successors, assigns and legal
representatives" is sufficient to render an agreement involving personal services assignable.
Orthotic & Prosthetic Lab, Inc. v. Pott, 851 S.W.2d 633, 639 (Mo. Ct. App. 1993), see also
Schnucks Twenty-Five, Inc. v. Bettendorf, 595 S.W.2d 279, 287 (Mo. Ct. App. 1979).

defendants' counterclaims for tortious interference with business and employment relations, unjust enrichment, unfair competition and defendants' request for injunctive relief.  Defendants' counterclaims are based on plaintiff's request and disclosure of "first cost" data to Erlbaum and plaintiff's introduction of Shaps-Shanin to Erlbaum.

      A.     Disclosure of "First Cost" Data to Erlbaum

Defendants assert the following counterclaims arising out of plaintiff's request for and disclosure of the "first cost" data to Erlbaum:  breach of contract; misappropriation of trade secrets and/or confidential and proprietary information; breach of fiduciary duty and duty of loyalty; unjust enrichment; and unfair competition.  Plaintiff argues that defendants' counterclaims for misappropriation of trade secrets and/or confidential and proprietary information, unjust enrichment and unfair competition are preempted by the Pennsylvania Uniform Trade Secrets Act (PUTSA), 12 Pa. Cons. Stat. Ann. § 5301, et seq. (2004).  Plaintiff also argues that defendants cannot establish any damages to support any of their counterclaims involving the "first cost" data.  Even if defendants could establish damages, plaintiff argues that defendants have not satisfied the other elements of these counterclaims.

      1.     PUTSA's Alleged Premption

Plaintiff argues that defendants' counterclaims for misappropriation of trade secrets and/or confidential and proprietary information, unjust enrichment and unfair competition are preempted by the PUTSA.[7]  The relevant section of the PUTSA provides as follows:

_____

[7]  The choice of law provision in the agreement between Macy's Retail and plaintiff only applied to claims arising under the agreement.  Thus, I must address choice of law for the counterclaims not arising under the agreement, including the analysis of whether the PUTSA preempts the counterclaims at issue.  Where, as here, federal jurisdiction is based on diversity of citizenship, I must apply the choice of law rules of the forum state, here Pennsylvania.  St. Paul

**(a) General rule.--**Except as provided in subsection (b), this chapter displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret.

**(b) Exceptions.--**This chapter does not affect:

(1) contractual remedies, whether or not based upon misappropriation of a trade secret;

(2) other civil remedies that are not based upon misappropriation of a trade secret; or

(3) criminal remedies, whether or not based upon misappropriation of a trade secret.

12 Pa. C.S.A. § 5308.  The dominant view of courts in states that have also adopted the Uniform

Trade Secrets Act of 1985 is that preemption exists to the extent that defendants' counterclaims

---

Fire & Marine Ins. Co. v. Lewis, 935 F.2d 1428, 1431 n.3 (3d Cir. 1991) citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). "Because choice of law analysis is issue-specific, different states' laws may apply to different issues in a single case, a principle known as depecage." Berg Chilling Sys., Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006); Taylor v. Mooney Aircraft Corp., 265 Fed. Appx. 87, 91 n.4 (3d Cir. 2008), recognizing prediction that a Pennsylvania court would apply different state laws in the same case because Griffith v. United Airlines, Inc., 203 A.2d 79, 805 (Pa. 1964), suggests that each issue must receive a separate choice of law analysis.

Pennsylvania's choice of law analysis requires that I determine whether a false conflict exists, and, if no false conflict exists, that I determine which state has the greater interest in the application of its law. LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996), citing Cipolla v. Shaposka, 267 A.2d 854, 855-56 (Pa. 1970). A false conflict exists where the application of either state's law renders the same result, Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc., 94 F. Supp.2d 589, 594 (E.D. Pa. 1999), or where "only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law," LeJeune, 85 F.3d at 1071.

Neither parties' briefs contain a discussion of choice of law beyond a mere mention that they agreed that Missouri law applies to the contract claims. The parties address the preemption issue under the PUTSA without objection to the application of Pennsylvania law. The only other state with a purported interest in this case is Missouri. Like Pennsylvania, Missouri has adopted the Uniform Trade Secrets Act, Mo. Ann. Stat. § 417.50 et seq. Thus, no differences exist between the laws of these two states to affect the outcome of whether the counterclaims at issue are preempted and a false conflict exists. There being no conflict, I will apply the forum states' law, i.e. the PUTSA. Scirex Corp. v. Federal Ins. Co., 313 F.3d 841, 847 n.1 (3d Cir. 2002); Drexel Univ. v. Santa Fe Sci. and Tech., Inc., 2005 WL 5973213, at *1 (E.D. Pa. Apr. 26, 2005).

are based on the same conduct that is said to constitute a misappropriation of trade secrets.  See e.g., Motorola, Inc. v. Lemko Corp., 2009 WL 383444, at *10 (N.D. Ill. Feb. 11, 2009); Hecny Trans., Inc. v. Chu, 430 F.3d 402, 404-05 (7th Cir. 2005); Penalty Kick Mgmt. Ltd. v. Coca Cola Co., 318 F.3d 1284, 1296-98 (11th Cir. 2003); Savor, Inc. v. FMR Corp., 812 A.2d 894 (Del. 2002).

Defendants' counterclaims for misappropriation of trade secrets and/or confidential and proprietary information, breach of fiduciary duty and duty of loyalty, unjust enrichment and unfair competition involve plaintiff's conduct of requesting and disclosing "first cost" data to Erlbaum.[8]  These claims each refer to the same "first cost" data and are wholly based on the same conduct as the conduct that comprises a misappropriation of trade secrets claim.  The "first cost" data is the sole information at issue in this case and it is either a trade secret or something less.[9]  Thus, these counterclaims are preempted only if the "first cost" data at issue constitutes a misappropriation of a trade secret.  See e.g., T.D.I. Intern, Inc. v. Golf Preservations, Inc., 2008 WL 294531, at *5 (E.D. Ky. Jan. 31, 2008), stating that breach of *fiduciary duty* claim is preempted by Kentucky Uniform Trade Secrets Act if premised upon the alleged disclosure of trade secrets; Weiss v. Fiber Optic Designs, Inc., 2007 WL 3342605, at *1 (E.D. Pa. Nov. 9, 2007), stating that claims of breach of *duty of loyalty* and *unfair competition* would be preempted to the extent they are based on misappropriation of trade secrets but delaying a finding on

---

[8]  As discussed above, some of these same counterclaims involve plaintiff's introduction of Shaps-Shanin to Erlbaum and this will be discussed below as they are separate claims.

[9]  Information need not rise to the level of a trade secret in order to qualify for protection under other theories.  See Brett Senior & Associates, P.C. v. Fitzgerald, 2007 WL 2043377, at *8 (E.D. Pa. July 13, 2007).  The parties should consider this question in future briefs.

preemption until it could be determined whether the conduct constituted a misappropriation of a trade secret; Penalty Kick Mgmt. Ltd. v. Coca Cola Co., 318 F.3d 1284, 1296-98 (11th Cir. 2003), agreeing with the district court's finding that breach of confidential relationship and duty of good faith and *unjust enrichment* claims are preempted by the Georgia Trade Secrets Act because these claims are based on the same facts that comprise the trade secret claim. (All emphases added).

The PUTSA creates a statutory cause of action for injunctive relief, compensatory damages and exemplary damages for the actual loss caused by misappropriation of trade secrets and the unjust enrichment caused by such misappropriation. 12 Pa. C.S.A. §§ 5303-4. "Misappropriation" is defined to include:

> (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) disclosure or use of a trade secret of another without express or implied consent by a person who:
>
> (i) used improper means to acquire knowledge of the trade secret;
>
> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>
> (A) derived from or through a person who had utilized improper means to acquire it;
>
> (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>
> (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>
> (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

15

12 Pa. C.S.A. § 5302.  A trade secret under the PUTSA is defined as:

> Information, including a formula, drawing, pattern, compilation including a costumer list, program, device, method, technique or process that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

PUTSA, 12 P.S. § 5302.  Some factors to be considered in determining whether given information is a trade secret are:  (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.  SI Handling Sys., Inc. v. Heisley, 753 F.2d 1244, 1255-56 (3d Cir. 1985), citing Restatement of Torts § 757 comment b (1939); Amerisourcebergen Drug Corp. v. Am. Associated Druggists, Inc., 2008 WL 248933, at *18-19 (E.D. Pa. Jan. 29, 2008); Iron Age Corp. v. Dvorak, 880 A.2d 657, 663 (Pa. Super. Ct. 2005).[10]

---

[10]  The PUTSA displaced Pennsylvania's common law tort for misappropriation of trade secrets, but there is no indication that the statute effected a substantive shift in the definition of "trade secret."  The common-law definition, like the statutory one, provided for protection for a formula, pattern, device, or compilation of information and required that the information be kept secret and provide a competitive value to the owner.  Pestco, Inc. v. Associated Prod., Inc., 880 A.2d 700, 706 (Pa. Super. Ct. 2005).  The conclusion that the PUTSA did not substantially alter the definition of "trade secret" is supported by post-PUTSA cases that rely on common law in determining whether certain information rises to the level of a trade secret.  See, e.g., Parsons v.

However, neither party has properly briefed whether this information qualifies as a trade secret.  Plaintiff argues that the PUTSA preempts defendants' counterclaims but states, without sufficient legal analysis, that the information does not qualify as a trade secret to satisfy the PUTSA because it was readily available to anyone who asked for it.  These arguments are contradictory; plaintiff cannot have it both ways.  See Callaway Golf Co. v. Dunlop Slazenger Group Am., Inc., 295 F. Supp.2d 430, 437 (D. Del. 2003), stating that arguing that information does not constitute a trade secret and also that other claims are preempted by the Trade Secret Act is contradictory.  Defendants did not respond with legal analysis on whether the "first cost" data constitutes a trade secret; instead they merely requested leave to file an amended counterclaim complaint if I find such information to be a trade secret.  As this information may qualify as a trade secret, I will not find that the data satisfies lesser standards than those required for a trade secret merely because the issue has not been properly briefed.  For this reason, I cannot find that defendants' counterclaims of misappropriation of trade secrets and/or confidential and proprietary information, breach of fiduciary duty and duty of loyalty, unjust enrichment and unfair competition are preempted at this time because defendants may still be able to recover under such theories in the event that the "first cost" data does not constitute a misappropriation of a trade secret under the PUTSA.  Cenveo Corp. v. Slater, 2007 WL 527720, at *3 (E.D. Pa. Feb. 12, 2007), stating "that the cases holding that the Trade Secrets Act does not preempt common law tort claims when it has yet to be determined whether the information at issue constitutes a trade secret take the better approach."  Thus, plaintiff's motion for summary

---

Pa. Higher Educ. Assistance Agency, 910 A.2d 177, 185-86 (Pa. Commw. Ct. 2006); Select Med. Corp. v. Hardaway, 2006 WL 859741, at *8 (E.D. Pa. 2006); Brubaker Kitchens, Inc. v. Brown, 2006 WL 1193223, at *1-2 (E.D. Pa. 2006).

judgment on these claims and defendants' motion for summary judgment on their

misappropriation of trade secrets and/or confidential and proprietary information claim and

breach of fiduciary duty and duty of loyalty claims will be denied without prejudice.  Defendants

will be permitted to file an amended counterclaim adding a claim under the PUTSA within 15

days from date.  Plaintiff and defendants will be permitted to simultaneously file motions for

summary judgment on these claims within 15 days from date briefing whether the information

qualifies as a trade secret, the merits of a claim under the PUTSA if the information is a trade

secret, the merits of the other claims if it does not with the relevant choice of law analysis, and

the appropriate relief available.  The parties are requested to provide authority to support their

arguments to allow me to properly determine the status of the information or if factual issues

exist regarding its status.  See Amerisourcebergen Drug Corp., 2008 WL 248933, at *26, finding

that whether the "information can qualify as trade secrets is dependant upon the resolution of

disputed questions of fact."

2. <u>Breach of Contract Claim</u>

Defendants allege that plaintiff breached his contract[11] with defendants by violating a

confidentiality restriction in a restrictive covenant provision of the agreement when he provided

Erlbaum with confidential information regarding "first cost" data.  Plaintiff argues that

defendants have not established that he engaged in any activity that breached his employment

agreement because they failed to show that the information allegedly misappropriated was

---

[11] Defendants' counterclaim for breach of contract for plaintiff's request and disclosure of the "first cost" data to Erlbaum is specifically excluded from the preemption by subsection (b)(1) of the PUTSA.  See 12 Pa. C.S.A. § 5308(b)(1), making an exception for contractual remedies.

18

confidential and proprietary information or that it was disclosed to anyone outside of defendants'
company while plaintiff was still employed with defendant.

To recover for its breach of contract claim under Missouri law,[12] defendant must establish
the following elements: "(1) the existence of an enforceable contract between the parties to the
action; (2) mutual obligations arising under its terms; (3) the party being sued failed to perform
obligations imposed by the contract; and (4) the party seeking recovery was thereby damaged."
Jackson v. Williams, Robinson, White & Rigler, P.C., 230 S.W.3d 345, 348 (Mo. Ct. App.
2007).

Plaintiff does not contest that a valid, enforceable contract giving rise to mutual
obligations existed between himself and Macy's Retail or that his employment agreement
obligated him not to disclose "Confidential Information" as defined in that agreement. However,
plaintiff claims that defendants have not established the third element, that he failed to perform
his contractual obligations, because defendants have failed to produce any evidence that the
information plaintiff disclosed was "Confidential Information" as defined in the agreement.
Plaintiff does not contest that he disclosed such information and, in fact, admits that he did.
Plaintiff also argues that defendants fail to satisfy the fourth element for the breach of the
confidentiality provision because they present no evidence that they suffered any damages as a
result of the alleged conduct. Defendants argue that they are entitled to summary judgment on
their counterclaim for breach of contract because plaintiff admits that he disclosed "first cost"
data to Erlbaum and such information was confidential.

---

[12] As discussed above, under the agreement Missouri law applies to the contract claims in
this case.

First, I will consider whether the information was confidential.  The confidentiality

provision in Section 6 states that plaintiff is prohibited "at any time, directly or indirectly, [from]

us[ing] or disclos[ing] any of May's [aka Macy's Retails'] Confidential Information except as

authorized and within the scope of [his] employment with May [aka Macy's Retail]".  Section

6(d) defines Confidential Information as:

> any non-public information pertaining to May's business.  Confidential
> information includes information disclosed by May to you, and information
> developed or learned by you during the course of or as a result of your
> employment with May, which you also agree is May's property . . . .  Confidential
> information includes, without limitation, information and documents concerning
> May's processes, suppliers (including May's terms, conditions and other business
> arrangements with suppliers); supplier and customer lists; advertising and
> marketing plans and strategies; profit margins; seasonal plans, goals objectives
> and projections; compilations, anaylses and projections regarding May's divisions,
> stores, product segments, product lines, suppliers, sales and expenses; files; trade
> secrets and patent applications (prior to their being public); salary, staffing and
> employment information (including information about performance of other
> executives); and "know-how," techniques or any technical information not of a
> published nature relating, for example, how May conducts its business.

As the agreement specifically defines what constitutes confidential information, I will consider

only whether the information satisfies the provision's definition.

Plaintiff argues that, based on his experience, factories in Asia are under no obligation to

keep the prices that they charge to their various customers confidential and that such information

is well known and readily available to anyone seeking to do business with the various

manufacturers from which David's Bridal buys dresses.[13]  I find this statement to be self-serving

---

[13]  Plaintiff specifically testified in his deposition that:

> The orient has no secrets.  Everyone in the orient knows everyone's business.  So
> what you're saying, I'm sure that everyone who wanted to know could easily find
> out.  The factories that David's used were not David's sole factories, they were
> factories that many people worked in . . . . As I explained to you before, there is

and without any factual or legal support.  Moreover, it fails to recognize the provision's definition which does not depend on plaintiff's experience.

Plaintiff also argues that the information at issue is public and, therefore, not confidential because confidential information under the agreement is defined as "any non-public information pertaining to May's business."  Plaintiff cites SI Handling Systems, Inc., v. Heisley, 753 F.2d 1244 (3d Cir. 1985) for the proposition that the price of materials are readily available from a third-party supplier.  Id. at 1257.  Plaintiff argues that this case supports that the cost of a company's product is not confidential information when readily available directly from the manufacturer.  However, SI Handling Systems addresses other products involved in the case and found that another product's price was confidential when the manufacturer was given exact specifications for the product and the product was manufactured exclusively for that customer. Id.  Plaintiff does not provide evidence to the contrary or even refute that the "first cost" data was a list of the manufacturing costs of the gowns and accessories in David's Bridal's Spring 2007 Bridal Catalog (approximately 140 items) manufactured by the factories to the design specifications of David's Bridal exclusively for David's Bridal.  The information at issue was not merely the costs that the factory charges for its materials that go into their customer's products; the information was specific for David's Bridal's products.  Although plaintiff may accurately argue that factories could provide third parties with the costs of the factories' materials, plaintiff provides no support for his contention that factories are permitted to provide the costs of David's

---

no secrets in the orient.  They [referring to any third party] could easily find that [referring to the cost of manufacturing of any specific David's Bridal gown.] They have the picture.  They could find out within an hour . . . Within five minutes, if they were in the factory.

Bridal's specific final products. Though individuals could request the cost of the material used in David's Bridal gowns for their own designs, this is distinguishable from individuals being told the factories' costs to manufacturer David's Bridal's designs. See id. Thus, the information satisfies the requirement under the agreement that confidential information be "non-public information pertaining to [Macy's Retail's] business."

Additionally, the agreement specifically states that confidential information "includes, without limitation, information and documents concerning [Macy's Retail's] . . . suppliers (including [Macy's Retail's] terms, conditions and other business arrangements with suppliers)." Plaintiff fails to provide any evidence that this provision does not cover the information at issue which concerns an aspect of the business arrangements with one of their factory suppliers. Because plaintiff fails to provide any such evidence or any evidence or law to refute the non-public nature of the information, the information qualifies as confidential information under the agreement.[14]

Moreover, plaintiff's arguments that he disclosed the "first cost" data to Erlbaum only after his employment with defendants ended is irrelevant to determining a breach of this provision. The confidentiality provision specifically states that plaintiff will not disclose the confidential information "at any time" without limiting it to his time of employment or even to a

---

[14] Because defendants have sufficiently provided evidence that the information at issue was confidential information under the agreement, I will not address any arguments suggesting that plaintiff's behavior with regard to his request of the information may also support that such information is confidential, the significance of the alleged confidentiality agreements David's Bridal had with the factories or plaintiff's argument that these agreements do not cover the information at issue. I note that as plaintiff refers to these agreements as alleged confidentiality agreements defendants may find it necessary to offer such agreements for in-camera review as support for their other claims when filing the additional brief requested.

year thereafter as the conflict of interest provision provides.  Additionally, plaintiff's argument

that Erlbaum was not and is still not in a competing business with David's Bridal and that the

alleged wholesale business that Erlbaum discussed with plaintiff would not actually compete

with defendants is irrelevant to a finding a breach of this provision.[15]  The provision does not

provide any language limiting a breach to those situations where the confidential information is

disclosed to someone who is competing or planning to compete with defendants' business.

Plaintiff disclosed the information to someone outside of defendants' company; whether the

individual established a competing legal entity at any time is irrelevant.  See Orthovita, Inc. v.

Erbe, 2008 WL 423446, at *9 (E.D. Pa. Feb. 14, 2008).  Thus, this information was confidential

and, as plaintiff admits he disclosed it to Erlbaum, defendants have established that plaintiff

failed to perform his obligation under the confidentiality provision.

Because defendants satisfied the third element, I will address whether defendants satisfy

the damage element of this claim.  Defendants claim that their damages were incurred when

plaintiff engaged in "disloyal conduct while on trips to Houston, Europe, and Asia at the

company's expense as part of his plan to obtain and provide David's Bridal's confidential first

cost data information to competitor or potential competitor Erlbaum."  Plaintiff argues that the

only conduct alleged to have occurred during any of plaintiff's travels was his request for "first

cost" data from Chow during his business trip to Hong Kong.  Although defendants include

Houston and London in their list of business trips, they do not provide any evidence of or even

specifically discuss in their briefing any additional conduct that would lead to damages during

---

[15]  As I find these arguments irrelevant, I will not address defendants' argument that plaintiff makes contradictory statements in his deposition and affidavit regarding his discussions with Erlbaum.

these trips.  Plaintiff also alleges that defendants fail to allege any damages as a result of

plaintiff's disclosure of the "first cost" data to Erlbaum.  Plaintiff also alleges that no damages

exist because he disclosed the information to Erlbaum only after his employment ended with

defendants.

As plaintiff admits that he requested the "first cost" data from Chow while on a business

trip in Hong Kong and provided it to Erlbaum and I find such information satisfies the

confidentiality provision's prohibition to disclose, the costs associated with this inappropriate use

of his time should be reimbursed to defendants.  Because the damages sustained consist of the

value of this use of time which occurred while employed by defendants, plaintiff's argument that

he disclosed the information after his employment with defendants ended is irrelevant.

Defendants, however, have failed to provide any evidence that this request was the entire purpose

of plaintiff's trip to Hong Kong; therefore, reimbursement of the trip as a whole would be

improper.  Additionally, defendants have provided no evidence that his trip to Hong Kong was

not part of his regular duties for David's Bridal, particularly as defendants do not dispute that

other David's Bridal employees not accused of any wrongdoing were also on the trip.  Therefore,

plaintiff does not forfeit his salary for these duties and need not reimburse defendants for the

entire expense of the trip.  See Fidelity Fund, Inc. v. Di Santo, 500 A.2d 431, 440 (Pa. Super. Ct.

1985).  He loses only the portion of his salary that can be attributed to the time he spent obtaining

the "first cost" data.  Id.  Defendants also fail to show any further damages from plaintiff

requesting and disclosing the "first cost" data to Erlbaum[16] or any law that the mere disclosure

---

[16] Defendants cite Dozor Agency, Inc. v. Rosenberg, 218 A.2d 583 (Pa. 1966) for the
proposition that it is entitled to recoup its costs of investigating plaintiff's conduct.  Id. at 585-86.
However, this case involved a discussion of out-of-pocket expenses for salaries for the time

results in damages.[17]  Thus, defendants' motion for summary judgment on their breach of

contract claim for this conduct will be granted and plaintiff's motion for summary judgment for

this claim will be denied.  A hearing on damages will be limited to determining the damages

incurred during the business trip to Hong Kong when plaintiff requested the information.

     B.     Introduction of Shaps-Shanin to Erlbaum

Defendants argue the following counterclaims for plaintiff's introduction of Shaps-

Shanin to Erlbaum:  breach of contract, breach of fiduciary duty and duty of loyalty and tortious

interference with business and employment relations.  Plaintiff claims that defendants fail to

demonstrate any damages as a result of this conduct.  Additionally, even if damages existed,

plaintiff argues that the fact that he admittedly introduced Shaps-Shanin to Erlbaum or that he

provided her name to Erlbaum cannot be a solicitation of a David's Bridal employee in violation

of his employment agreement's conflict of interest provision or a breach of any duty because he

introduced Shaps-Shanin to Erlbaum at Shaps-Shanin's request and there were never any

concrete discussions or plans for a business, let alone a competing business, to solicit Shaps-

Shanin to join.

Each of these counterclaims requires that defendants prove damages.  See e.g., Jackson,

230 S.W.3d at 348, breach of contract claim requires damages; Baker v. Family Credit

---

employees spent reinstating former policies and protecting other policies affected by defendant's
actions.  Id.  The case does not discuss entitlement to recoup costs incurred by defendants to
investigate plaintiff's conduct.  Defendants provide no other case law to support the
reimbursement of such costs.

    [17]  Even if defendants had provided law to support that mere disclosure creates damages,
plaintiff claims that the disclosure did not occur until February when he was no longer employed
by defendants and was instead employed by David's Bridal.

Counseling Corp., 440 F. Supp.2d 392, 414-15 (E.D. Pa. 2006), breach of fiduciary duty claim

requires a suffered injury harm; McDermott v. Party City Corp., 11 F. Supp.2d 612, 626 n.18

(E.D. Pa. 1998), breach of duty of loyalty requires a suffered injury; Rossi v. Schlarbaum, 600 F.

Supp.2d 650, 659 (E.D. Pa. 2009), tortious interference with business and employment relations

claims require actual damages.[18]   Based on plaintiff's arguments, I will first address whether

defendants have satisfied the damage element of these claims.

Defendants have not established any damages associated with plaintiff's introduction of

Shaps-Shanin to Erlbaum, with his providing her name to Erlbaum at Erlbaum's request that

plaintiff tell him "the names of people that were good that were employees of David's" or with

his request for Shaps-Shanin's employment contract to satisfy these counterclaims.  Defendants

do not provide any evidence of damages they incurred based on plaintiff's introduction of Shaps-

---

[18]   As discussed above, under the agreement Missouri law applies to the breach of
contract counterclaim.  With regard to the other counterclaims based on plaintiff's introduction
of Shaps-Shanin to Erlbaum, neither parties' briefs contain a discussion of choice of law nor is
there a dispute regarding which law to use and, indeed, both parties use Missouri and
Pennsylvania law interchangeably in their briefings for some of these counterclaims.  Like
Pennsylvania, Missouri law for defendants' counterclaims of breach of fiduciary duty and duty of
loyalty and tortious interference with business and employment relations requires damages.  See
e.g., Icard Stored Value Solutions, L.L.C. v. West Suburban Bank, 2008 WL 619236, at *3 (E.D.
Mo. Mar. 3, 2008), citing Preferred Physicians Mut. Mgmt. Group v. Preferred Physicians Mut.
Risk Retention, 918 S.W.2d 805, 810 (Mo. Ct. App. 1996), breach of fiduciary duty claim
requires damage; Pony Computer, Inc. v. Equus Computer Sys.of Mo., Inc., 162 F.3d 991, 999
(8th Cir. 1998), citing Peterson v. Continental Boiler Works, Inc., 783 S.W.2d 896, 904-05 (Mo.
1990), a breach of the duty of loyalty is treated as breach of a fiduciary duty which requires
damages; Nitro Distributing, Inc. v. Alitcor, Inc., 565 F.3d 417, 427-28 (8th Cir. 2009), citing
Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 316 (Mo. 1993), tortious interference claims require
damages.  Because these counterclaims can be decided on the damage element alone, and the
laws of the interested states do not differ materially on this element, no conflict exists and I will
apply Pennsylvania law.  Scirex Corp., 313 F.3d at 847 n. 1; Drexel Univ., 2005 WL 5973213, at
*1; Vital State Canada, Ltd. v. DreamPak, LLC, 303 F. Supp.2d 516, 521 (D. N.J. 2003), finding
that no conflict for choice of law analysis is needed when only one element was necessary to
decide the case and the laws of the interested states did not differ materially on this element.

Shanin to Erlbaum.  No evidence exists that Shaps-Shanin left defendants' employment as a result of such introduction or that she left at all.  Defendants provide no allegations of such damages, let alone evidence of such and fail to provide any law that the mere introduction results in damages.  As discussed above, the only evidence of damages defendants provide for any of their counterclaims involves expenses incurred by David's Bridal when plaintiff requested the "first cost" data in Hong Kong.  Thus, plaintiff's motion for summary judgment on defendants' breach of contract, breach of fiduciary duty and duty of loyalty and tortious interference with business and employment relations claims for plaintiff's introduction of Shaps-Shanin to Erlbaum will be granted because defendants fail to provide any evidence of damages for these counterclaims.  Accordingly, defendants' motion for summary judgment on their counterclaims for breach of contract and breach of fiduciary duty and duty of loyalty for this conduct will be denied.

An appropriate Order follows.