IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PHILIP YOUTIE | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MACY'S RETAIL HOLDING, INC., and | : | NO. 07-3182 |
| MACY'S, INC. | : | |

O'NEILL, J.                                                                                           AUGUST   31,   2009

MEMORANDUM

On July 17, 2009, David's Bridal, Inc. filed a motion to intervene as a party to defendants Macy's Inc. (Macy's)[1] and Macy's Retail Holdings, Inc.'s (Macy's Retail)[2] counterclaims against plaintiff Philip Youtie pursuant to Federal Rule of Civil Procedure 24(a) and 24(b) because it is the current owner of the trade secret/confidential information at issue in the counterclaims. Presently before me are the motion to intervene (D. No. 81), plaintiff's response and David's Bridal's reply thereto.

BACKGROUND

I.     Procedural History

On August 3, 2007, plaintiff Philip Youtie filed a complaint against defendant Macy's alleging a breach of plaintiff's employment agreement and violations of the Pennsylvania Wage Payment and Collection Law (WPCL), 43 P.S. § 260.1, et seq.  Jurisdiction is based on diversity

---

[1] Macy's had various corporate names during the periods relevant to this litigation:  The May Department Stores Company, May DE; Federated Department Stores, Inc.; and Macy's, Inc. For this reason, regardless of its name at the relevant time period, I will refer to this defendant as Macy's.

[2] Macy's Retail also had various corporate names during the periods relevant to this litigation:  The May Department Stores Company, May NY; Federated Retail Holding, Inc.; and Macy's Retail Holdings, Inc.  For this reason, regardless of its name at the relevant time period, I will refer to this defendant as Macy's Retail.

of citizenship. 28 U.S.C. § 1332.[3] On December 17, 2007, Macy's filed an answer, affirmative defenses and counterclaims alleging that plaintiff breached his employment agreement, misappropriated trade secrets and/or confidential and proprietary information, breached his fiduciary duty and duty of loyalty, engaged in tortious interference with business and employment relations, was unjustly enriched and engaged in unfair competition. On August 19, 2008, plaintiff filed an answer to Macy's counterclaims. On March 26, 2009, plaintiff filed an amended complaint against defendants alleging the same claims and adding Macy's Retail as an additional defendant. Defendants filed their answer to the amended complaint, affirmative defenses and identical counterclaims against plaintiff on April 15, 2009. On May 5, 2009, plaintiff filed his answer to defendants' counterclaims.

    The parties filed their first cross-motions for summary judgment in Fall 2008. On June 5, 2009, I ruled on the motions as follows: (1) I granted defendants' and denied plaintiff's motion for summary judgment on plaintiff's breach of contract and WPCL claims and entered judgment for defendants and against plaintiff on that claim; (2) I granted plaintiff's and denied defendants' motion for summary judgment on defendants' counterclaims of breach of contract, breach of fiduciary duty and duty of loyalty and tortious interference with business and employment relations with respect to plaintiff's introduction of David's Bridal employee Linda Shaps-Shanin to Steven Erlbaum; (3) I granted defendants' and denied plaintiff's motion for summary judgment on defendants' counterclaim of breach of contract for plaintiff's request for and disclosure of "first cost" data; (4) I denied without prejudice plaintiff's and defendants' motion

---

[3] Plaintiff's complaint alleged that defendants are citizens of the State of New York and plaintiff is a citizen of Florida and requested the requisite jurisdictional amount.

for summary judgment on defendants' counterclaims of misappropriation of trade secrets and/or confidential and proprietary information, breach of fiduciary duty and duty of loyalty, unjust enrichment and unfair competition with regard to plaintiff's request for and disclosure of "first cost" data and allowed defendants to file an amended counterclaim complaint adding a claim under the Pennsylvania Uniform Trade Secrets Act (PUTSA), 12 Pa. Cons. Stat. Ann. § 5301, et seq. (2004); (5) I allowed the parties to file motions for summary judgment thereafter; and (6) I denied without prejudice plaintiff's motion for summary judgment on defendants' request for injunctive relief.

On June 20, 2009, defendants filed an amended counterclaim to include a claim under the PUTSA.  The parties filed their second cross-motions for summary judgment on defendants' remaining counterclaims which are currently pending before me.  On July 14, 2009, plaintiff filed his answer to defendants' amended counterclaim.

II.     Factual History

In the counterclaims in which David's Bridal, a Florida corporation, has moved to intervene, defendants argue that the conduct of plaintiff during his employment with them gave rise to their causes of action against him.

On August 1, 2000, Macy's acquired all of the publicly-held shares of David's Bridal. David's Bridal is a corporation and a clothier specializing in bridal gowns and other formal wear and accessories.  Plaintiff had purchased David's Bridal in 1972, expanded the operations, partnered with Steven Erlbaum beginning in 1989 or 1990 and with Erlbaum made a public offering of David's Bridal's stock in 1999.  After Macy's acquired David's Bridal, plaintiff entered into a contract of employment with a division of Macy's, Macy's Retail.  In accordance

with the terms of the agreement, plaintiff served as the Executive Vice-President, Product Development and Sourcing of the David's Bridal division of Macy's Retail. On November 17, 2006, an affiliate of Leonard Green & Partners signed an agreement with Macy's to acquire David's Bridal. The sale and transfer of stock of David's Bridal to the Leonard Green affiliate was consummated on January 31, 2007. As part of the transaction, Macy's subsidiary Macy's Retail assigned its employment agreement with plaintiff to David's Bridal. This assignment provided the basis for plaintiff's breach of contract and WPCL claims on which I entered judgment in favor of defendants in my June 5, 2009 Order.

David's Bridal terminated plaintiff's employment "for cause" as Executive Vice President on February 27, 2007 based upon his allegedly competitive and disloyal conduct that is the basis of defendants' counterclaims.

Plaintiff admits that he obtained first cost data on the dresses in David's Bridal's Spring 2007 catalogue from Lydia Chow, an employee of Fillberg LTD, David's Bridal's Hong Kong marketing representation, during a business trip to Hong Kong in January 2007 with David's Bridal employees. Plaintiff does not dispute that the first cost data at issue is the cost the manufacturer charged David's Bridal to manufacture the designs David's Bridal provided the manufacturer for its Spring 2007 catalogue. Additionally, plaintiff admitted in his affidavit that he "asked for the cost data because [] Erlbaum . . . was interested in what David's Bridal paid various manufacturers for the dresses they manufactured." Plaintiff further admits that he gave a copy of the cost sheet to Erlbaum.[4] However, whether plaintiff provided the first cost data to

---

[4] Plaintiff also admits that he and his former partner Erlbaum had general discussions about Erlbaum returning to the bridal business. However, he states that no specifics were discussed and that neither had plans to enter into a business in competition with David's Bridal.

Erlbaum while still employed by Macy's Retail, after his agreement was assigned to David's Bridal or after he was terminated by David's Bridal is uncertain.  Defendants claim that plaintiff provided conflicting testimony regarding the timing of the disclosure.  He stated:  (1) in his June 2008 deposition testimony that he did not know when he disclosed the first cost data to Erlbaum; (2) in his December 29, 2008 response to defendants' partial motion for summary judgment that, although he did not recall exactly when he provided the first cost data to Erlbaum, he recalls that he disclosed it after he recovered from his January 2007 surgical procedure which would have been some time in February 2007 when he was employed by David's Bridal; and (3) in his July 14, 2009 answer to defendants' counterclaims that he did not disclose the information "until after his employment with David's Bridal was terminated on February 27, 2007."

Section 6(a) of the Employment Agreement prohibited plaintiff "at any time, directly or indirectly, [from] us[ing] or disclos[ing] any of May's [aka Macy's Retails'] Confidential Information except as authorized and within the scope of [his] employment with May [aka Macy's Retail.]"  Section 6(d) defines "confidential information" and the agreement also contains a non-compete clause for conflicts of interests, neither of which is at issue at this time.

DISCUSSION

David's Bridal is seeking intervention as a matter of right or permissive intervention into defendants' counterclaims against plaintiff pursuant to Federal Rule of Civil Procedure 24.

---

In his deposition on June 4, 2008, plaintiff testified that, during the period in which he was employed by David's Bridal, he and Erlbaum discussed starting a business in "direct competition" with David's Bridal but that no specifics were discussed.  However, in his December 2008 affidavit, plaintiff claimed that the potential business discussed was "a wholesale dress manufacturing business in an off-shore location" that "would not compete in any way with David's Bridal."

5

Plaintiff argues that the motion should be denied because David's Bridal cannot establish that it satisfies the requirements for intervention pursuant to either Federal Rule of Civil Procedure 24(a) or 24(b). Plaintiff also argues that David's Bridal's motion should be denied because David's Bridal was an indispensable party at the time the counterclaims were filed; thus, its intervention would destroy diversity jurisdiction because both plaintiff and David's Bridal are citizens of the state of Florida

I.Analysis under Rule 24(a)

Federal Rule of Civil Procedure 24(a), which governs an applicant's intervention as a matter of right, provides in relevant part:

> Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Fed. R. Civ. P. 24(a)(2). The Court of Appeals has set forth a four-part test to determine whether an applicant may intervene in an action as of right. Harris v. Pernsley, 820 F.2d 592, 596 (3d Cir. 1987). An applicant is entitled to intervene as of right if it has met the burden of demonstrating that: "(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation." Liberty Mut. Ins. Co. v. Treesdale, Inc., 419 F.3d 216, 220 (3d Cir. 2005). "Each of these requirements must be met to intervene as of right." Id., citing Mountain Top Condo. Assoc. v. Dave Stabbert Master Builder, Inc., 72 F.3d 361, 366 (3d Cir.

1995) (citation omitted). However, a "very strong showing that one of the requirements is met may result in requiring a lesser showing of another requirement." Harris, 820 F.2d at 596, citation omitted.

    A.    Timeliness

The Court of Appeals has set forth three factors for determining whether an application to intervene is timely: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." Mountain Top Condo., 72 F.3d at 369, citation omitted. Whether intervention is claimed of right or as permissive, the preliminary question is whether the application is "timely." If intervention is untimely, it should and must be denied. NAACP v. New York, 413 U.S. 345, 365 (1973). Timeliness is to be determined from all of the circumstances of the case, and the determination is one that is within the discretion of the court which has the responsibility for the ultimate disposition of the litigation. Id. at 366. Timeliness "is not just a function of counting days; it is determined by the totality of the circumstances [and a]lthough the point to which the litigation has progressed is one factor to consider, it is not dispositive." United States v. Alcan Aluminum, Inc., 25 F.3d 1174, 1181 (3d Cir. 1994), citation omitted. While "[t]he mere passage of time . . . does not render an application untimely, . . . the critical inquiry is: what proceedings of substance on the merits have occurred? This is because the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may cause to the parties already involved." Choike v. Slippery Rock Univ. of Penn. of State Sys. of Higher Educ., 297 Fed. Appx. 138, 141 (3d Cir. 2008), citing Mountain Top Condo., 72 F.3d at 369-70, internal citations omitted.

    The litigation on plaintiff's claims is completed, but defendants' counterclaims are still

pending. Plaintiff filed his claims on August 3, 2007. Defendant Macy's filed counterclaims, in which David's Bridal seeks to join, on December 17, 2007. Following discovery, on March 26, 2009, plaintiff filed an amended complaint adding defendant Macy's Retail. On June 5, 2009, I entered judgment in favor of defendants on plaintiff's claims and denied without prejudice parties' cross-motions for summary judgment on defendants' counterclaims currently at issue and requested re-briefing on those issues. On June 20, 2009, defendants filed an amended counterclaim including counterclaims for declaratory judgment, injunctive and monetary relief pursuant to the PUTSA and a motion for summary judgment on the counterclaims. Though some legal determinations have been made on defendants' counterclaims, no legal determinations have been made regarding the counterclaims at issue.[5] However, substantial discovery and briefing has taken place on defendants' counterclaims in which David's Bridal seeks to intervene more than 19 months after these counterclaims were first filed. In fact, discovery has closed. Although parties agree that the three-year statute of limitations under the PUTSA would not bar David's Bridal's claim, 12 Pa. C.S.A. § 5307, David's Bridal's motion to intervene has been offered at a late stage in these proceedings.

Moreover, David's Bridal was at all points in the litigation the owner of the first cost data

---

[5] I made legal determinations on defendants' counterclaims of breach of contract, breach of fiduciary duty and duty of loyalty and tortious interference with business and employment relations with respect to plaintiff's introduction of David's Bridal employee Linda Shaps-Shanin to Steven Erlbaum and defendants' counterclaim of breach of contract for plaintiff's request and disclosure of first cost data. I did not make legal determinations on defendants' counterclaims of misappropriation of trade secrets and/or confidential and proprietary information, breach of fiduciary duty and duty of loyalty, unjust enrichment and unfair competition with regards to plaintiff's request for and disclosure of first cost data or defendants' request for injunctive relief. Instead, I allowed defendants to file an amended counterclaim complaint adding a claim under the PUTSA and requested additional briefing on these counterclaims by the parties.

at issue in defendants' counterclaims so it was the only party that could properly bring a motion for an injunction against future disclosure and use of the data. At the time of the filing of defendants' counterclaims, more than 19 months before David's Bridal filed a motion to intervene, David's Bridal knew or should have known of the risk to its rights as the current owner of the first cost data at issue and the fact that it is the only party that could seek an injunction against future harms. Although defendants pursue injunctive relief in their counterclaims and David's Bridal now claims that this was done on its behalf, David's Bridal knew or should have known that, as the owner of the data, David's Bridal needed to be a party to this litigation for any party to pursue injunctive relief. Additionally, neither defendants nor David's Bridal have provided any authority that defendants are entitled to seek injunctive relief on behalf of David's Bridal without making it a party to the litigation. Provision 11 of the employment agreement preserves defendants' obligations "except to the extent that they are actually discharged by the subsidiary" and does not preserve any rights for defendants.

      To prevail, therefore, David's Bridal must convincingly explain its reason for the delay in filing its motion to intervene. See Choike, 297 Fed. Appx. at 141, citation omitted. "To the extent the length of time an applicant waits before applying for intervention is a factor in determining timeliness, it should be measured from the point at which the applicant knew, or should have known, of the risk to its rights." Alcan Aluminum, 25 F.3d at 1183.

      First, David's Bridal claims without explanation that it did not intervene earlier because the employment agreement at issue "required [plaintiff] not to disclose confidential information gathered during his employment and extended the original restrictive covenant provisions for a period of one year after any litigation challenging [defendants'] rights to enforce the contract." I

cannot find in the employment agreement , and David's Bridal has provided no citation to, a provision extending the agreement for one year after commencement of litigation.  However, the existence of such a provision in the agreement is irrelevant to my determinations of timeliness because a one-year extension after the initiation of this action of the original restrictive covenant provision would not permit defendants to pursue injunctive relief on behalf of David's Bridal.

      Second, David's Bridal claims that it did not intervene earlier because the wrongful conduct at issue occurred while defendants owned David's Bridal.  David's Bridal claims that plaintiff created an issue as to whether wrongful conduct occurred when plaintiff was employed by defendants or by David's Bridal.  Plaintiff has asserted that he disclosed the data to Erlbaum on three different dates:  (1) in his June 2008 deposition testimony he testified that he did not know when he disclosed the first cost data to Erlbaum; (2) in his December 29, 2008 response to defendants' partial motion for summary judgment he stated that although he did not recall exactly when he provided the first cost data to Erlbaum, he recalls he disclosed it after he recovered from his January 2007 surgery which would have been some time in February 2007 when he was employed by David's Bridal; and (3) in his July 14, 2009 answer to defendants' counterclaims he stated that he did not disclose the information "until after his employment with David's Bridal was terminated on February 27, 2007."  However, plaintiff claims that he admitted as early as his December 2008 response to defendants' motion for summary judgment that he disclosed the first cost data some time in February 2007 and therefore David's Bridal knew this information over seven months before it moved to intervene.  Thus, plaintiff claims that David's Bridal knew or should have known that the date of the disclosure could affect its rights seven months before filing its motion for intervention.

David's Bridal claims that its motion to intervene was timely because it was filed mere weeks after my June 23, 2009 Order raising the question of whether David's Bridal was the proper party to be pursuing the injunction that defendants seek.  As neither party had properly briefed the injunctive relief issue in the original motions for summary judgment, I had requested briefing of the issue in my June 5, 2009 Order and my June 23, 2009 Order.  However, the fact that I requested briefing of the issue does not support the proposition that the issue arose on those dates or that David's Bridal had no burden to timely intervene to protect its rights until I raised the issue.  David's Bridal's right to protect the first costs data arose when it acquired the data and it should have intervened when defendants filed their counterclaims 19 months previously.

Regardless of the factual issues relating to the timing of plaintiff's disclosure, I find that David's Bridal's argument is not a convincing reason for its delay because David's Bridal was always the proper party to pursue injunctive relief.  If David's Bridal had timely intervened to protect its first cost data by means of injunctive relief, plaintiff's creation of a factual dispute regarding the timing of the disclosure would have been irrelevant because David's Bridal would have been a party at the time the factual dispute arose.[6]

---

[6] David's Bridal can bring an action in state court to protect its interests in the first cost data.  As both David's Bridal and plaintiff are citizens of the state of Florida, David's Bridal could pursue an action under the Florida Uniform Trade Secrets Act, West's F.S.A. § 688.007, et seq.; this claim is within the three year statute of limitations for such claims.  West's F.S.A. § 688.007, stating that "[a]n action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered."  Plaintiff asserts that David's Bridal has four years to bring their contract claims.  Additionally, by claiming that David's Bridal's rights would not be affected by the outcome of this litigation and asserting that it is free to bring an action in state court, plaintiff has conceded that no claim or issue preclusion will operate to bind David's Bridal in a state law action against plaintiff and I agree.  See Toll Bros., Inc. v. Century Sur. Co., 318 Fed. Appx. 107, 111-12 (3d Cir. 2009).

David's Bridal also argues that existing parties in this litigation would suffer no prejudice if its intervention were granted. Defendants have stated that they do not object to David's Bridal's intervention. Thus, the issue of prejudice need only be addressed to the extent that it affects plaintiff's rights. David's Bridal argues that the issues that remain in defendants' counterclaims, namely whether the first cost data are a trade secret, when plaintiff disclosed the first cost data to Erlbaum and what, if any, use plaintiff and/or Erlbaum have made of this data, will not be affected by David's Bridal's intervention in this matter. Discovery has closed in this litigation. Plaintiff argues in his response that "David's Bridal's intervention would require the reopening of discovery as [p]laintiff would be required to conduct extensive discovery regarding, inter alia, the measures David's Bridal took to secure the confidentiality of the 'first cost' data, the cost to David's Bridal of those measures, and the value to David's Bridal of the 'first cost' data both at the time it was disclosed and now, two and one-half years later." It will materially prejudice plaintiff to require it to pursue additional discovery into David's Bridal's claims before resolution of defendants' counterclaims in this litigation. In particular, permitting David's Bridal to intervene would cause additional delay in an already aging lawsuit, burden the Court and force the parties to incur additional legal expenses with regard to the claims and defenses proffered by David's Bridal. Additionally, David's Bridal's attached proposed claims against plaintiff include a separate claim for breach of contract that would expand the scope of this litigation. I therefore find plaintiff's objections regarding the hardship of reopening discovery if David's Bridal intervenes to be persuasive.

Thus, I find that David's Bridal's motion to intervene is not timely. As a motion to intervene as a matter of right must fulfill all four requirements, Mountain Top Condo, 72 F.3d at

366, and as David's Bridal's motion fails to satisfy the timeliness requirement, I will deny David's Bridal's motion to intervene as matter of right under Rule 24(a).

II.    Analysis under Rule 24(b)

David's Bridal has also requested permissive intervention.  Rule 24(b) provides inter alia:

> Upon timely application anyone may be permitted to intervene in an action . . . (2) upon an applicant's claim or defense and the main action have a question of law or fact in common . . . .  In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

Fed. R. Civ. P. 24(b).  Timeliness and the existence of common questions of law or fact must inform the court's exercise of discretion in permitting intervention.  See McKay v. Heyison, 614 F.2d 899, 906 (3d Cir. 1980).  As I have found David's Bridal's application for intervention by right not to be timely, permissive intervention is not timely either.  Additionally, for the reasons stated above, although the claims at issue and David's Bridal's claims share some questions of law or fact, I find that David's Bridal's intervention will prejudice plaintiff and unduly delay the outcome of this litigation.  Therefore, I will deny David's Bridal's motion for permissive intervention under Rule 24(b).[7]

An appropriate Order follows.

---

[7] As I am denying David's Bridal's motion to intervene on other grounds, I need not consider plaintiff's argument that permitting David's Bridal to intervene would destroy this Court's diversity jurisdiction over defendants' counterclaims or whether David's Bridal's motion satisfies the remaining factors to intervene as a matter of right.